# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**FRANK J. ARTEAGA,**

    Plaintiff,

  v.

                                          Case No. 17-CV-1282

**MEGAN J. BRENNAN,**

    Defendant.

## DECISION AND ORDER ON DEFENDANT'S MOTION
## FOR SUMMARY JUDGMENT

Frank J. Arteaga files this lawsuit against Megan J. Brennan, who, as Postmaster General of the United States, is the chief executive officer of Arteaga's employer, the United States Postal Service. (Amended Complaint, Docket # 15.) Arteaga alleges that he was discriminated against based on his age and national origin and retaliated against for engaging in protected activity. The Postal Service has moved for summary judgment. (Defendant's Motion for Summary Judgment, Docket # 36.) For the reasons explained below, the Postal Service's motion for summary judgment is granted.

## UNDISPUTED FACTS

Arteaga has submitted Responses to Defendant's Proposed Findings of Fact (Docket # 42) and his own Proposed Findings of Fact ("PPFOF") (Docket # 41). The Postal Service argues that Arteaga's submissions "consist largely of an amalgamation of conclusory, general assertions that are unsupported by specific facts or admissible evidence." (Defendant's Reply Brief at 6–7, Docket # 45.) I agree. Nearly all of Arteaga's factual assertions come from his

own deposition testimony. *See* Fed. R. Civ. P. 56(c)(1) (requiring a party asserting that a fact is genuinely disputed to support the assertion by citing to particular parts of materials in the record, including depositions). While citation to deposition testimony is permitted, to survive a motion for summary judgment, the testimony must be also be admissible in evidence. *See* Fed. R. Civ. P. 56(c)(2). Many of Arteaga's assertions are speculative, conclusory, and lacking in personal knowledge. Others appear to be inadmissible hearsay. Because Arteaga largely fails to contradict the Postal Service's factual assertions with admissible evidence, I will take most of the Postal Service's proposed findings of fact (Defendant's Statement of Undisputed Material Facts ("DPFOF"), Docket # 38) as uncontested.

Arteaga, a Hispanic male born in 1961, has worked for the Postal Service since 1985. (Am. Compl. ¶ 3; DPFOF ¶ 1.) Around 2002, Arteaga filed an administrative complaint against the Postal Service alleging discrimination based on national origin. (*Id.* ¶ 13; PPFOF ¶ 6.) After Arteaga won his case at a hearing, "the Postal Service 'posted it on bulletin boards all over.'" (PPFOF ¶ 8.) Also, several Postal Service employees talked about the discrimination case and asked Arteaga questions about it. (*Id.* ¶ 9.)

When Arteaga met fellow Postal Service employee Jay Smith at a postal function sometime between 2003 and 2007, Smith asked for Arteaga's advice on filing a discrimination complaint; Arteaga told Smith the whole history of his discrimination complaint. (*Id.* ¶ 10; DPFOF ¶¶ 9, 14.) At that time, Arteaga and Smith were both sales department employees of equal rank with the same or similar job responsibilities. (DPFOF ¶ 10; PPFOF ¶ 1.) This was the only communication during which Arteaga discussed a discrimination complaint or other protected activity under Title VII (collectively, "EEO activity") with Smith. (DPFOF ¶ 16.) Smith has no other knowledge of any EEO activity by Arteaga. (*Id.* ¶ 17.)

During his employment with the Postal Service, Arteaga has worked in various titled and detailed (i.e., temporarily assigned) positions, in both domestic and international sales. (*Id.* ¶ 2.) Between April 2014 and October 2014, Arteaga was detailed as a Strategic Account Manager. (*Id.* ¶ 3; PPFOF ¶ 18.) While in that position, Arteaga received excellent reviews and feedback. (PPFOF ¶ 18.) At the end of the detail, Arteaga declined to stay in the Strategic Account Manager position permanently because he was bored in that position. (DPFOF ¶ 4; PPFOF ¶ 19.)

In February 2015, Arteaga was promoted to International Sales Executive (Senior). (DPFOF ¶ 7.) The promotion was a grade higher on the Postal Service's Executive & Administrative Schedule, as Arteaga moved from a Level 23 position to a Level 24 position. (*Id.* ¶¶ 5, 7; PPFOF ¶ 20.) A position that is higher on the Schedule is more senior and comes with more duties, responsibilities, higher pay potential, and better promotion opportunities than a position that is lower on the Schedule. (DPFOF ¶ 6.)

Arteaga was still working as an International Sales Executive (Senior) in June 2016—making $85,934 a year—when the Postal Service's Chicago District posted an Internal Job Posting for a Strategic Account Manager position, which was a Level 23 position. (*Id.* ¶¶ 7–8, 19.) The job posting identified nine qualifications and requirements for which applicants had to demonstrate their knowledge, skills, and abilities ("KSAs"). (*Id.* ¶ 20.) At the time of the posting, Arteaga was unhappy about a recent change in his supervisor, (PPFOF ¶ 21), and he felt he "needed a break," (*id.*; DPFOF ¶ 22). He called Smith, the Selecting Official for the Strategic Account Manager position, (DPFOF ¶ 30), to see if he could apply for the position noncompetitively, as others had been permitted to do in the past, and Smith declined Arteaga's request, (PPFOF ¶ 25). Arteaga applied anyway because the position involved local

3

clients and less responsibility than his current position. (*Id.* ¶¶ 21, 24; DPFOF ¶ 22.) His application detailed his experience and qualifications for the opening. (PPFOF ¶ 22.) Arteaga understood that his salary would not increase if he were selected for the Strategic Account Manager position. (*Id.* ¶ 23; DPFOF ¶ 24.) Compared to Arteaga's Level 24 position, the Level 23 Strategic Account Manager position was a demotion. (DPFOF ¶ 23.)

Applications for the Strategic Account Manager position were initially reviewed by a three-person Review Board. (*Id.* ¶ 25.) The Review Board examined thirteen applications and assigned each candidate a score from 0 to 3 for each KSA identified on the job posting, with a "0" indicating deficient, "1" indicating minimally acceptable, "2" indicating strong, and "3" indicating excellent. (*Id.* ¶ 26.) The Review Board assigned Arteaga 17 points, which ranked fourth out of the thirteen candidates. (*Id.* ¶ 27.) Brandon Watson, who at that time was detailed into a Strategic Account Manager position with the Postal Service, (*id.* ¶ 43), and had been mentored by Arteaga, (PPFOF ¶¶ 29–31), received the highest score, 20 points, (DPFOF ¶ 27). Smith was not a member of the Review Board and had no input into the Board's assessment of applicants. (*Id.* ¶ 29.) Arteaga does not allege that the Review Board or any of its members acted with discriminatory or retaliatory animus when evaluating or scoring applicants for the Strategic Account Manager position. (*Id.* ¶ 28.) The Review Board forwarded the names of the top-four scoring candidates—Watson, Arteaga, Hilten Parmar, and Roderick Price—to Smith for interviews. (*Id.* ¶ 31.)

On July 13, 2016, Smith interviewed each of the four candidates via telephone. (*Id.* ¶ 32.) Each interview was allotted sixty minutes. (*Id.* ¶ 33.) Smith asked each candidate the same nine questions, plus one additional question that was tailored to a specific experience identified on the candidate's application materials. (*Id.*) During the interview, Smith typed up

4

each candidate's responses to his questions. (Declaration of Jay Smith ("Smith Decl.") ¶¶ 11, 14, Docket # 39.) Immediately after each interview, Smith ranked the responses on a scale from 0 to 3, with a highest possible total of 30 points. (*Id.* ¶ 14; DPFOF ¶ 34.)

Smith awarded Arteaga 13 points based on his responses to the interview questions, the lowest score among the four candidates. (DPFOF ¶¶ 44, 48; Exhibit 3 to Smith Decl., Docket # 39-3.) According to Smith, Arteaga performed poorly at his interview. (DPFOF ¶ 45.) Smith perceived that Arteaga was long-winded, hard to follow, and rambled. (*Id.* ¶ 35.) Smith also perceived that Arteaga inappropriately and continuously attempted to control the conversation. (*Id.* ¶ 36.) In Smith's view, Arteaga did not provide complete, thorough responses to many of the interview questions, and he was unable to discuss specific details concerning experiences he mentioned during the interview. (*Id.* ¶ 37.) Also, Smith was skeptical about Arteaga's motivation for wanting to transfer to a lower-level position within the Postal Service. (*Id.* ¶ 38.) During the interview, Arteaga told Smith that he was unconcerned about dropping a grade level because he expected his salary to remain the same. (Smith Decl. ¶ 16.) Smith also knew that Arteaga had previously been detailed into a Strategic Account Manager position and that Arteaga had declined the opportunity to extend that assignment. (DPFOF ¶ 39.)

The highest scorer was Watson, with 23 points. (*Id.* ¶ 46; Exhibit 5 to Smith Decl., Docket # 39-5.) According to Smith, Watson did not ramble, was not long-winded or difficult to follow, and did not attempt to take control of the interview. (DPFOF ¶ 42.) Also, his responses to the interview questions were more complete and more thorough than the responses given by the other three candidates. (*Id.*) For example, Watson thoroughly described his experience with the Postal Service's sales department, his sales experience

5

handling key accounts before working at the Postal Service, and his educational experience and internships within the marketing industry, and he explained how those experiences made him well qualified for the Strategic Account Manager position. (*Id.* ¶ 40.) Based on his responses to each of the interview questions, Smith determined that Watson was well qualified to manage the direct marketing and catalog companies for which the successful candidate for the Strategic Account Manager position would have responsibility. (*Id.* ¶ 41.) Smith was also aware that Watson was detailed as a Strategic Account Manager at the time of the interview and was performing well, which gave Smith confidence that Watson knew what the position required and was genuinely motivated to do the job. (*Id.* ¶ 43.)

Because he had the highest interview score among the four candidates, Watson was selected by Smith to fill the open Strategic Account Manager position. (*Id.* ¶ 47.) Smith notified Watson of his selection on August 3, 2016. (*Id.* ¶ 50.) Watson was offered an annual salary of $64,659, which was more than $20,000 less than what Arteaga was making at the time in his Level 24 position. (*Id.* ¶ 51.)

On August 4, 2016, Arteaga was notified that he was not selected for the Strategic Account Manager position. (*Id.* ¶ 52; PPFOF ¶ 33.) Arteaga then requested to meet with Smith to discuss his interview performance. (*See* Smith Decl. ¶¶ 14, 26.) In preparation for that meeting, Smith added handwritten comments to Arteaga's interview evaluation sheet, including "Rambled" and "Hard to Follow." (*Id.* ¶ 14; Smith Decl. Ex. 3.)[1] A few days later, Smith spoke with Arteaga on the phone. (Smith Decl. ¶ 26.) Smith told Arteaga that he felt Arteaga took control of the interview and that Arteaga's answers were too long-winded.

---

[1] Watson's interview evaluation sheet does not contain any additional, handwritten notes. (PPFOF ¶ 42; Smith Decl. Ex. 5.)

(Exhibit A to Declaration of Frank J. Arteaga ("Arteaga Decl.") at 164:24–167:3, Docket # 43-1; Exhibit 1 to Defendant's Response to Plaintiff's Proposed Findings of Fact at 8, Docket #46-1.) Arteaga did not lose any wages or other monetary benefits as a result of not being selected for the Strategic Account Manager position. (DPFOF ¶ 53.)

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. *Id.* at 247–48. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654 (1962)). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence that would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 322–24. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for

the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (quoting *Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 995 (7th Cir. 2003)).

## ANALYSIS

Arteaga alleged in his Amended Complaint that his employer discriminated against him based on his age in violation of the Age Discrimination in Employment Act, discriminated against him based on his national origin in violation of Title VII of the Civil Rights Act of 1964, and retaliated against him for his prior complaints of discrimination in violation of Title VII. The Postal Service moves for summary judgment on all claims. In response, Arteaga expressly abandons his age-discrimination claim. (Plaintiff's Brief in Opposition at 11, Docket # 44.) Arteaga also appears to abandon his national origin-discrimination claim, as he failed to defend that claim against the Postal Service's arguments. (*See id.* at 11 ("Thus, the Defendant's denial of Plaintiff's transfer application should be considered an adverse action for purposes of Title VII retaliation"), 17 ("Thus, this Court should deny summary judgment to the Defendant on Mr. Arteaga's Title VII retaliation claim.")). *See Maclin v. SBC Ameritech*, 520 F.3d 781, 788 (7th Cir. 2008) ("In her response to [Defendant's] motion for summary judgment, [Plaintiff] failed to defend her claim against these arguments. . . . She therefore abandoned the claim."). Thus, the Postal Service is entitled to summary judgment on Arteaga's age-discrimination and national origin-discrimination claims, leaving only the Title VII retaliation claim for decision.

Title VII prohibits federal employers from discriminating against federal employees and applicants on the basis of race, color, religion, sex, and national origin. 42 U.S.C. § 2000e-16(a). "Although Title VII contains no express anti-retaliation provision applicable to federal employment," *Kohler v. Brennan*, 238 F. Supp. 3d 1112, 1118 (E.D. Wis. 2017), the Seventh

Circuit has "assumed that the federal-sector provision of Title VII, 42 U.S.C. § 2000e-16, . . . encompasses a claim for retaliation," *Reynolds v. Tangherlini*, 737 F.3d 1093, 1099 n.3 (7th Cir. 2013); *see also Hale v. Marsh*, 808 F.2d 616, 619 (7th Cir. 1986) (noting that the federal-sector provision of Title VII, § 2000e-16, has been interpreted to incorporate the private-sector provision of Title VII, 42 U.S.C. § 2000e-3(a)). To survive summary judgment on a Title VII retaliation claim, a plaintiff must produce "evidence that would permit a reasonable factfinder to conclude that [his] engagement in protected activity caused a materially adverse . . . action." *Fields v. Bd. of Educ.*, 928 F.3d 622, 626 (7th Cir. 2019) (citing *Madlock v. WEC Energy Group, Inc.*, 885 F.3d 465, 472 (7th Cir. 2018); *Lauth v. Covance, Inc.*, 863 F.3d 708, 716 (7th Cir. 2017)).

It is undisputed that Arteaga's alleged statutorily protected activity consisted of a discrimination complaint he filed against the Postal Service in the early 2000s. (Defendant's Brief in Support at 13, Docket # 37; Pl.'s Br. at 13; Def.'s Reply at 9.) Arteaga alleges that, in refusing to hire him for the Strategic Account Manager position, the Postal Service discriminated against him "at its first available opportunity based on prior complaints of discrimination." (Am. Compl. ¶ 25.) The Postal Service argues that, as a matter of law, Arteaga's non-selection for the Strategic Account Manager position was not an actionable adverse employment action. (Def.'s Br. at 3–6, Docket # 37; Def.'s Reply at 3–5.) The Postal Service further argues that, even if that decision were actionable, no reasonable jury could find that the reason for the non-selection was a pretext for retaliation. (Def.'s Br. at 8–14; Def.'s Reply at 5–12.)

"In the retaliation context, determining whether an action is materially adverse means inquiring whether it well might have dissuaded a reasonable worker from making or

supporting a charge of discrimination." *Boss v. Castro*, 816 F.3d 910, 918 (7th Cir. 2016) (applying *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006) to a Title VII retaliation claim against a federal agency); *see also Lapka v. Chertoff*, 517 F.3d 974, 985–86 (7th Cir. 2008) (same). "Examples of such an action would include 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.'" *Lapka*, 517 F.3d at 986 (quoting *Crady v. Liberty Nat'l Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 1993)). However, "not everything that makes an employee unhappy is an actionable adverse action." *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996).

Arteaga's non-selection for the Strategic Account Manager position is insufficient to meet the anti-retaliation provision's materially adverse action standard. It is well-established that a denial of a request for a transfer to a position with equal pay, benefits, and responsibilities does not constitute an adverse action supporting a Title VII retaliation claim. *See Brown v. Advocate S. Suburban Hosp. & Advocate Health & Hosps. Corp.*, 700 F.3d 1101, 1108 (7th Cir. 2012) (finding that the denial of a request for a transfer "might be an adverse employment action, provided the transfer would have resulted in higher pay or benefits"); *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 900 (7th Cir. 2003) ("[T]he denial of an opportunity to move to [a higher paying] position, unlike the mere denial of a lateral transfer, constitutes a materially adverse employment action."); *Dandy v. UPS*, 388 F.3d 263, 275 (7th Cir. 2004) ("[B]ecause [Plaintiff's] request was for a lateral transfer offering parallel pay, benefits, and responsibilities, [Defendant's] refusal to grant that request does not constitute an adverse employment action."); *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th

Cir. 1996) ("Obviously a *purely* lateral transfer, that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action. A transfer involving no reduction in pay and no more than a minor change in working conditions will not do, either."). Arteaga does not dispute that the Strategic Account Manager position was essentially a demotion: his pay would not have increased if selected for that position[2] and, because that position was a grade lower on the Postal Service's Schedule, he would have had less responsibility and less promotional opportunity than the position he held at the time. (*See* Pl.'s Resp. to DPFOF ¶¶ 5–8, 23–24.) Thus, the non-selection alone was not materially adverse as a matter of law.

Arteaga nevertheless argues that his non-selection is actionable because he feared retaliation from his new supervisor, he preferred the lower-level position, and he was denied a "noncompetitive downgrade." (Pl.'s Br. at 10–11.) These purportedly adverse actions are also insufficient. First, Arteaga relies on non-binding authority for the proposition that the denial of a transfer away from a discriminatory supervisor "to a non-biased supervisor more likely to advance his career[] falls within Title VII's heartland." (*Id.* (quoting *Ortiz-Diaz v. U.S. Dep't of Hous. & Urban Dev.*, 867 F.3d 70, 74 (D.C. Cir. 2017).) Even if that were the law in this circuit, it would not apply here, as Arteaga acknowledged in his own deposition that he did not have any problem with his new supervisor, and he did not think his new supervisor was discriminating against him. (*See* Arteaga Decl. Ex. A, at 73:19–74:2.) Moreover, it is undisputed that Arteaga would have been less likely to advance in his career if he had been selected for the Strategic Account Manager position. (*See* Pl.'s Resp. to DPFOF ¶¶ 5–7, 23.).

---

[2] Indeed, the starting salary of the person who did get the job was more than $20,000 less than what Arteaga was making at the time. (*See* Pl.'s Resp. to DPFOF ¶ 51.)

Second, "cases of purely subjective preference for one position over another" do not satisfy Title VII's materially adverse criterion. *See Herrnreiter v. Chi. Hous. Auth.*, 315 F.3d 742, 745 (7th Cir. 2002). Arteaga's desire to get away from his supervisor and for a break from his current duties and responsibilities, (*see* PPFOF ¶¶ 21, 24), therefore is not sufficient to show an adverse action.

Finally, the denial of Arteaga's request to apply for the Strategic Account Manager position noncompetitively did not result in any objective harm to him. Arteaga testified during his deposition that when Smith denied his request, he did not say anything to discourage Arteaga from applying. (*See* Arteaga Decl. Ex. A, at 139:1–140:12.) Arteaga also testified that he knew he was not guaranteed to get the job. (*See id.* at 118:20–21.) Despite being denied the noncompetitive downgrade, Arteaga still applied for the position, and he was one of the top four candidates who interviewed for it. These undisputed facts demonstrate that the denied request did not result in any adverse job consequences for Arteaga.

In sum, Arteaga has failed to present a genuine issue of fact that his non-selection for the Strategic Account Manager position might have dissuaded a reasonable worker from making or supporting a charge of discrimination. Because Arteaga has failed to produce sufficient evidence from which a reasonable factfinder could conclude that he suffered a materially adverse action, I do not need to address whether a reasonable factfinder could also find a causal link between Arteaga's prior discrimination complaint and his non-selection for the Strategic Account Manager position. Accordingly, summary judgment is granted in favor of the Postal Service.

## CONCLUSION

The Seventh Circuit has stated that summary judgment is the "put up or shut up" moment in a lawsuit. *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010). While Arteaga argues that he was passed over for the Strategic Account Manager position because of his prior discrimination complaint against the Postal Service, he fails to put forward any evidence on which a rational trier of fact could find in his favor. For these reasons, the Postal Service's motion for summary judgment is granted.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the Postal Service's motion for summary judgment (Docket # 36) is **GRANTED**.

**IT IS FURTHER ORDERED** that the clerk of court will enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 3rd day of December, 2019.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge